## Andrew C. Valentine *et al. versus* Solomon Piper.

Where a letter of attorney purported to be executed in a foreign country several years ago, by a person residing there, it was allowed to be proved by secondary evidence, without proof that the subscribing witnesses were not within the jurisdiction of the Court.

Where the attesting witnesses to a deed are not within the jurisdiction of the Court, it may be proved by evidence of the handwriting of the party by whom it was executed.

A letter of attorney by force of which a deed of real estate is executed, is not required by law to be acknowledged and recorded.

Under a letter of attorney authorizing the attorney to make sale of real estate and receive the purchase money, he has authority to execute the proper instrument required by law to carry the sale into effect.

It is competent to the jury to presume a lost deed of real estate, where from long continued and uninterrupted possession and other circumstances such a presumption can reasonably be made ; and in such case the rule that a deed cannot be given in evidence unless registered, does not apply ; or it may be further presumed, that the lost deed was registered and that the record has been lost or destroyed.

As under the colony ordinance the owner of upland bordering on tide water is in general the owner of the adjoining flats to low-water mark, if a lost deed of the upland is presumed, it will carry the flats as appurtenant, without proof of the presumed grantor's actual possession of the flats ; unless there be evidence that the title to the flats has been separated from the title to the upland by the alienation of one without the other.

In an action to recover a parcel of flats to the south of Summer street, in Boston, it appeared that the land on the north and that on the south of the street originally constituted one line of shore, and the several proprietors of the upland were coterminous proprietors of the flats ; and there was evidence tending to show that some wharves had been erected in the first century of the settlement of the town, in conformity to which the land and flats had ever since been held; and in reference to this evidence the jury were instructed, that if they should be satisfied that Summer street, (which was laid out in 1683,) was laid out over the flats in conformity with the lines of the lots and of the wharves to the northward of that street, it would be evidence to show that the flats to the southward of the street were to be divided by the same course or system. It was *held*, that this instruction was correct.

This was a writ of entry, wherein was demanded a parcel of flats, below Sea street and south of Summer street, in Boston. The demandants counted on the seisin of their father, Lawson Valentine. The cause was tried upon the general issue, before *Wilde* J.

The demandants claimed the demanded premises as appurtenant to an ancient wharf, formerly called Price's and more recently Valentine's wharf.

To show their title to the demanded premises, the demand-ants produced a deed executed by George Sullivan as attorney of Andrew Price, a clergyman in England, to Lawson Valentine, and a power of attorney to Sullivan, purporting to have been executed by Price in England, attested by two subscribing witnesses ; and they called Samuel A. Eliot, who testified that he had corresponded with Price, and believed the signature to be his. The tenant objected to the proof of the power of attorney upon this evidence of the handwriting of Price, but the judge admitted it. This instrument empowered the attorney to sell the land, either by private sale or by auction, and to dispose of the proceeds according to the future instructions of the constituent, but did not in express terms authorize the attorney to execute a deed.

It appeared that a part of the upland of the Price estate was formerly vested in Mary Sweet, who died as early as 1721, and it did not appear that she or her heirs had ever made a conveyance of it. Nathaniel I. Bowditch testified that he could not find, by searching the records, that Mary Sweet or her heirs ever made any conveyance or claim of the flats on Sea street.

As to this the jury were instructed, that they might presume a grant from the heirs of Mary Sweet, if the evidence should satisfy them that such a presumption could reasonably be made ; but that the rule of presumption as to twenty years' adverse enjoyment of an easement was not to govern them in the present case ; if however from the long possession of the demandants and those under whom they claim, and the non-claim of the heirs of Mary Sweet, they should think it reasonable to presume a grant, they should so find.

Originally there was a continuous shore north and south of Summer street. The demandants read ancient records of the town of Boston, showing that divers persons had leave to wharf out from their upland lying north of that street. Also the record of the laying out, in 1683, of the lower end of Summer street and of Sea street, " on the southerly side of land of John Gill, deceased, thirty feet in breadth from the lower corner of said Gill's wharf next the sea." Also of the laying out, at the same time, of Sea street and a grant of the flats

and land between the highway into the sea, to the proprietors
of the land which are abuttors on the said way, in equal pro-
portions to their several grants on said way," on condition of
their keeping the street in repair.

Numerous deeds and other documents were introduced in
evidence on both sides.

As to the division of the flats the jury were instructed, that
if they should be satisfied from the evidence, that Summer
street was laid out over the flats in conformity with the lines of
the lots, and of the wharves to the northward of the street, it
would be evidence to show that the flats to the southward were
to be divided by the same course ; and if they should so find,
the demandants would be entitled to the flats in front of their
upland between Summer street and a parallel line to the south,
so as to give them the same width throughout as their lot meas-
ured at high water.

The jury found accordingly.

If either of the directions was incorrect, a new trial was to
be granted ; otherwise judgment was to be entered on the ver-
dict.

*Hubbard* and *C. P. Curtis*, for the defendant.   The power
of attorney from Andrew Price was admitted without the re-
quisite proof.   In order to prove a deed, purporting to be ex-
ecuted in the presence of a subscribing witness, such witness
or his deposition should be produced, or it should be shown
that he is dead or absent and not to be found and that reason-
able exertions have been made to procure his testimony, and in
such case his handwriting should be proved.   Proof of the
handwriting of the party himself, is not proof of the execution
of the deed.   1 Stark. Evid. (4th Amer. edit.) 330, 334,
337, 340, 341 ; *Whitaker* v. *Salisbury*, 15 Pick. 534, 544 ;
*Hill* v. *Unett*, 3 Maddock, 370 ; *Jackson* v. *Waldron*, 13
Wendell, 178 ; *M'Pherson* v. *Rathbone*, 11 Wendell, 96 ;
*Pelletreau* v. *Jackson*, 11 Wendell, 110 ; *Jackson* v. *Cody*,
9 Cowen, 140 ; *Whittemore* v. *Brooks*, 1 Greenl. 57 ; *Rus-
sell* v. *Coffin*, 8 Pick. 150 ; *Dudley* v. *Sumner*, 5 Mass. R.
462 ; *Fox* v. *Reil*, 3 Johns. R. 477 ; *Johnson* v. *Mason*,
1 Esp. R. 90.

This power of attorney, being the foundation of the deed of

Price, ought to have been acknowledged and recorded. It was in fact recorded, but not being acknowledged, the recording was of no effect. Revised Stat. *c.* 59, § 1, 22, 28 , *St.* 1783, *c.* 37, § 4 ; Ancient Charters &c. 303 ; *Tolman* v. *Emerson*, 4 Pick. 160.

This power does not authorize the making a deed. It merely empowers the attorney to sell and receive the proceeds ; which are both consistent with the grantor's executing the deed.

A deed from Mary Sweet could not be presumed from mere possession by the demandants and those under whom they claim, and non-claim on the part of her heirs. As by the *Prov. St.* 9 *Will.* 3, *c.* 7, a grant is of no validity except against the grantor and his heirs, unless recorded, not only must it be presumed that Mary Sweet made a deed, but likewise that it was recorded, and it must be proved that the record was destroyed. *Hendy* v. *Stephenson*, 10 East, 55 , *Blewett* v. *Tregonning*, 3 Adolph. & Ellis, 554 ; *Stoever* v. *Lessee of Whitman*, 6 Binney, 416 ; *Sumner* v. *Child*, 2 Connect. R. 607 ; *Goodtitle* v. *Baldwin*, 11 East, 488 ; *Doe* v. *Waterton*, 3 Barn. & Ald. 149 ; *Watrous* v. *Southworth*, 5 Connect. R. 310. Under a plea of a lost deed the date and parties to the deed must be set forth. *Hendy* v. *Stephenson*, 10 East, 55 ; *Blewett* v. *Tregonning*, 3 Adolph. & Ellis, 554.

*J. Mason* and *F. Dexter, contrà,* argued that the rule requiring proof of the handwriting of a subscribing witness to a deed was inconvenient and unnecessary ; that when the signature of the witness is proved, it only leads to the presumption that the instrument was signed by the party ; which is not so satisfactory as proving directly the signature of the party himself ; and that under the circumstances of the case, the letter of attorney from Price was duly proved. *Coghlan* v. *Williamson*, 1 Doug. 93 ; *Hall* v. *Phelps*, 2 Johns. R. 451 ; *Lesher's Lessee* v. *Levan*, 2 Dallas, 96 ; *Clark* v. *Sanderson*, 3 Binney, 192 ; *M'Pherson* v. *Rathbone*, 11 Wendell, 96 ; *Homer* v *Wallis*, 11 Mass. R. 308 ; 1 Phillips on Evid (6th ed ) 447 ; *Doe* v. *Durnford*, 2 Maule & Selw. 62 ; *Abbot* v *Plumbe*, 1 Doug. 216 ; *Crosby* v. *Percy*, 1 Taunt. 366 ,

*Jackson* v. *Burton*, 11 Johns. R. 64 ; *Whittemore* v. *Brooks*, 1 Greenl. 57.

The statute does not require that a letter of attorney to convey land shall be recorded. The purpose of the statute is to have notice given of the transfer, and this is effected by recording the deed of conveyance.

To the point that a deed of upland from Mary Sweet might be presumed, and that the flats would then pass as appurtenant, they cited *Doane* v. *Broad Street Association*, 6 Mass. R. 332 ; *Jackson* v. *M'Call*, 10 Johns. R. 377 ; *Ricard* v. *Williams*, 7 Wheaton, 108, 109, 110 ; *Farrar* v. *Merrill*, 1 Greenleaf, 17 ; *Doe* v. *Prosser*, 1 Cowp. 217 ; *Doe* v. *Reed*, 5 Barn. & Ald. 232.

SHAW C. J. delivered the opinion of the Court. The present case comes before the Court upon a motion of the defendant to set aside the verdict and grant a new trial, on the grounds of misdirection, and mistake of law in the admission of evidence, and as a verdict against evidence.

The action was brought by the heirs of Lawson Valentine, to recover a tract of flats, over which the sea ebbs and flows, as appurtenant to, and parcel of a tract of land, bounded on salt water, and the plaintiffs began by showing a title to the upland, in respect to which this tract of flats was claimed. The land consisted of a wharf, lying near the bottom of Summer street, bounding on Boston harbour, known at different periods, as Valentine's wharf, Price's wharf and Bull's wharf. Valentine claimed under several persons of the name of Price.

The first exception is to an instrument, purporting to be a letter of attorney from Andrew Price to George Sullivan. Evidence was given, tending to show, that Andrew Price, at the time of making the instrument, and for many years previous, had resided in England, and the instrument purported to have been executed there. Under these circumstances, secondary evidence was offered to prove the execution of the instrument, which was objected to, without calling the attesting witnesses, or proving that they were not within the jurisdiction of the court, but the objection was overruled, and the secondary evidence admitted. And the Court are of opinion, that this was correct. If the instrument was apparently executed in a for-

Valentine
*v.*
Piper.

*April 6th,*
1839

eign country, we think that fact raised a sufficient presumption, that the subscribing witnesses were not within the jurisdiction of the Court, so as to let in other evidence of the execution. If this presumption were not admitted, it would be nearly impossible ever to offer proof of the execution of such an instrument. It has been held, that where a witness appears to have once resided within the jurisdiction of the court, an inquiry made at the place of his former residence, and amongst those who had formerly known him, and not finding him, or gaining intelligence of him, raises a presumption that he is dead or beyond the jurisdiction of the Court. But it would be nearly impossible to prove negatively, that a person who attested a deed twenty years ago in England, is not now within the State of Massachusetts ; there is no medium of proof, by which such a negative proposition can be established.

2. The second exception was to the nature of the proof offered as secondary evidence, which in the present instance was the testimony of one who had corresponded with the constituent in the letter of attorney, and testified to his belief of the genuineness of the handwriting.

Different rules have prevailed on this subject ; in some instances, and this we believe is the more general rule, it has been held that where an instrument under seal, and commonly requiring attesting witnesses, is to be proved by secondary evidence, the handwriting of the subscribing witnesses, is to be proved in the first instance. The Court are of opinion, that where the attesting witnesses are not within the jurisdiction of the court, proof of the handwriting of the party is a species of proof which has often been admitted in this Commonwealth and is more direct and satisfactory than that of the handwriting of the witnesses. The Court are therefore of opinion, that upon a cause shown for the admission of secondary evidence, it was competent in the first instance to offer proof of the handwriting of the party executing the instrument.

3. It was however further contended, that this letter of attorney being the instrument by force of which the deed was executed, under which the plaintiffs claim, could not be given in evidence in support of a title, without being duly acknowledged and recorded according to the statute in regard to deeds

This instrument was in fact recorded July 24, 1821, but did not purport to have been acknowledged, and it was therefore contended that it was entered of record without authority, and such registration was a mere nullity. And we are inclined to the opinion that if not acknowledged, or proved in some of the modes pointed out by the statute, the act of the register in recording it, could not give it validity. The question therefore is, whether by law, a letter of attorney, by force of which a deed is executed, must itself be acknowledged and recorded, in the manner required for the deed itself. We are not aware that this question has been directly decided ; but it seems probable, considering how frequently titles depend upon deeds executed by attorney, that it must have often arisen.

The question depends upon a just construction of the statutes. *St.* 1783, *c.* 37, § 4. The Court are of opinion, that the statute cannot be so construed as to extend to powers of attorney, authorizing conveyances of real estate. Some of the reasons applicable to the case of deeds, and rendering it convenient that they should be placed on the public registry, are applicable to powers, but not all of them. The object of registration, as has often been decided, is not so much to furnish or preserve evidence of title, as to give notice of the alienation and transmission of estates, and of incumbrances and liens upon them. The deed made by attorney and registered, gives this notice as effectually as if made personally by the grantor. It does not furnish proof of the execution of the power, it is true ; but the registry is not relied on to furnish proof, and in fact it is not regarded as furnishing proof of the genuineness of the instruments recorded in it. Perhaps our system of registration, with some slight modification, might be made much more available to the public benefit than it is, if it were so organized and conducted as to furnish *primâ facie* proof of titles ; but that is a question for the legislature, and not one of judicial consideration.

The statute does not in terms extend to powers of attorney, and we are of opinion that they do not come within the provisions of the statutes. The power of attorney therefore in the present case, was rightly admitted, without acknowledgment or statute proof, and without registration.

Some objection was taken to the legal effect of this instru ment. It purported to authorize the attorney to make sale of the real estate of the constituent, as therein described, but there were no express words authorizing the attorney to exe- cute a deed or deeds. But the Court are of opinion, that the instrument is not open to this exception. Where the term " sale " is used in its ordinary sense, and the general tenor and effect of the instrument is, to confer on the attorney a power to dispose of real estate, the authority to execute the proper instruments required by law, to carry such sale into effect, is necessarily incident. It is in pursuance of a general maxim, that an authority to accomplish a definite end, carries with it an authority, so far as the constituent can confer it, to execute the usual, legal and appropriate measures proper to accomplish the object proposed. A power of attorney might be so drawn as to authorize the attorney to make sale of an estate, where it might be apparent that it was the intention of the constituent to authorize the attorney to negotiate for a sale, leaving it to the constituent afterwards to ratify it and to execute deeds. Should it appear, either from the restricted words used, or from the tenor of the whole instrument, that such was the in- tent, it ought to be construed as conferring such a restricted power only. In the present case, we think it was the intent of the constituent to confer on the attorney an authority to trans fer the estate.

The next class of objections was of a different character. It became necessary in the course of the inquiry, in one aspect of the case, to show a conveyance from one Mary Sweet, in whom it appeared by the proof, that a part of the Price estate was formerly vested. From an examination of the records, it did not appear that Mary Sweet had ever made any convey- ance of the land in question. The judge instructed the jury, that from a long continued and uninterrupted possession, on the part of the Price family, if proved, and no adverse claim by any person under Mary Sweet, they might presume a grant from Mary Sweet, notwithstanding none appeared of record. Evidence of this character was given ; whereupon the Court instructed the jury, that on the evidence, they might presume a grant from the heirs of Mary Sweet, if the evidence should

satisfy them, that such a presumption could reasonably be made ; but that the rule of presumption as to twenty years' adverse enjoyment of an easement, was not to govern in the present case.   If, however, from the possession of the demandants and those under whom they claim, and the non-claim of the heirs of Mary Sweet, they should think it reasonable to presume a grant, they should so find.   (*Sumner* v. *Child*, 2 Connect. R. 607.)

Several exceptions were taken to this direction.

The main ground relied upon is, that by the statutes of this Commonwealth, no deed can be given in evidence, without its being registered, and if the deed is not produced, nor found of record, there can be no proof of registration.

This doctrine of presuming grants, was originally adopted for the purpose of quieting titles, and giving effect to long continued possessions.

Until a comparatively recent period, no deed could be pleaded without profert ; but when it came to be settled, that a grant could be presumed from long continued possession and enjoyment and other circumstances, it was also held, as a necessary consequence, that the profert might be dispensed with, on a suggestion that the deed has been lost by time and accident.   The technical exception is made to yield to the substantial rule. *Read* v. *Brookman*, 3 T. R. 151.   We consider the point now under consideration as having been fully settled in the case of *Melvin* v. *Locks and Canals*, &c. 17 Pick. 255, which I believe has been published since this case was argued.   Where a great number of circumstances concur, such as peaceable possession of an estate, the presence of those, who upon any other hypothesis would have an adverse title, without claim, all tending to show an undisputed ownership on the part of those who set up such non-appearing grant, they have been considered as presenting so strong a presumption of fact, that a deed has been executed, that it is allowed to stand as proof of such deed.   The same doctrine has long been applied to cases of easement ; and in England they have been long established, as sufficient to prove a grant.   It has often been said by judges, that where there is a proper case for presumption, every thing will be presumed necessary to give it effect, even letters pa

tent, deeds, records, by-laws, or an act of parliament. *Mayor of Hull* v. *Horner*, Cowp. 102. The Court are therefore of opinion, that the direction was right, and that it was for the jury, upon the evidence, to presume a grant, if the facts proved would warrant it. Such a question is a mixed question of fact and law, to this extent, that the facts being found, it is for the court to advise the jury, whether in their nature and quality they are sufficient to raise the presumption proposed, the weight of the evidence being for the jury.

But it was said, that the ground was not stated with sufficient distinctness, from whom and to whom the supposed grant was made. But we consider that this exception applies rather to the mode of pleading than to the nature and effect of the evidence. Where by the forms of proceeding it is necessary specially to plead a title, there it is necessary to set out the name of grantor and grantee, in proper form, and allege a deed or other proper instrument, now lost by time and accident. But the same kind of proof, as stated in this report, would be admitted under such plea, to support the averments contained in it. There is a recent case, *Blewett* v. *Tregonning*, 3 Adolph. & Ellis, where the subject is discussed and considered.

It was further objected, that such proof, being in effect proof of title by disseisin, could not extend to the flats, because the proof of actual possession, which might be given in regard to the upland, could not be so, in regard to the flats. But we think there is no force in this objection. The effect of the Colony ordinance, is to make the upland extend to low-water mark, where the land bounds on the salt water, where the tide ebbs and flows. It is true, that an owner may separate his upland from his flats, by alienating the one, without the other. But such a conveyance is to be proved, not presumed, and therefore ordinarily proof of title in the upland thus bounded, carries with it evidence of title in the flats. Now as the proof in question, if admissible and available at all, is proof of a grant of the land, bounding on salt water, by Mary Sweet to the ancestors of the demandants, it proves title in them, and by force of that title and the legal presumption which carries it to low-water mark, it proves title to the flats, without showing an actual possession of the flats.

The last exception which I shall notice, was that taken to the direction of the court, in regard to the course in which the lines should run from the upland to low water.

There is no question which presents itself to a court of justice, which in its details is attended with greater difficulty than that of the course and direction of flats, as appurtenant to or incident to the land bounding upon salt water. The Colony ordinance has laid down no practical rule but only declared a general principle, which it is extremely difficult to apply to the great variety of locations to be affected by it. This difficulty is often a formible one, when it is an original question, and the whole line of flats is open to division amongst coterminous proprietors. But after possessions have been long taken, and locations originally made without regard to any fixed rule, have come to be settled and fixed by actual and continued possession, the question is much more complicated. Where enough has been done to raise a presumption, that lines have been settled by mutual agreement, considerable force ought to be attributed to actual possession. And as far as possession has been actually taken, by wharves and buildings, and that continued for a length of time sufficient to bar actions and entries, it necessarily becomes conclusive.

In the present case there was evidence tending to show, that some wharves had been erected in that vicinity, in the first century of the settlement of the town, in conformity to which the land and flats had been ever since held, and this tended to fix a location of the lines of the flats in controversy, by an early adjustment amongst the several coterminous proprietors. In reference to this evidence the jury were instructed, that if they should be satisfied from the evidence, that Summer street was laid out over the flats in conformity with the lines of the lots and of the wharves to the northward of that street, it would be evidence to show that the flats to the southward were to be divided by the same course, and if they should so find, the demandants would be entitled to the flats in front of their upland between Summer street and a parallel line to the south, so as to give them the same width throughout as their lot measured at high-water mark.

The Court are of opinion, that this instruction, under all the

circumstances in proof, was correct and adapted to the case. The land on the north, and that on the south of Summer street, originally constituted one line of shore, and the several proprietors were coterminous proprietors of flats. If the line of Summer street which immediately adjoined the dock which separated that street from Price's wharf, was a fixed line, it had a strong tendency to fix the north line of the dock and the width of the dock being presumed to be equal, it fixed the northerly line of the demandant's premises. It was objected that Summer street could not be laid out in conformity with the lines of the lots north of it, because they were not parallel to each other. But I apprehend that this is not the true meaning and construction of this direction. The lots northerly of Summer street might vary from each other considerably, and yet it might appear that they were laid out upon a certain plan and system. If Summer street was laid out, not in a parallel line to all those wharves, but in general conformity to a plan and system indicated, then it had a tendency to fix and give direction to the line of flats next northerly of it. This being so, the other part of the rule would necessarily follow, that if the plaintiffs established their upland line, and the north line of their flats, the southerly l'ne should be taken to be parallel, so as to give an equal width of flats, at low-water mark, with that at the wharf above, unless the land was situated on a cove, where the lines must necessarily converge, or where there is some other fact to control the general presumption.

The Court are therefore of opinion that the direction was right.

Seeing no sufficient ground, upon the evidence, to say that the verdict was against the weight of the evidence, the opinion of the Court is, that judgment be entered on the verdict for the demandants.